**DISTRICT OF COLUMBIA, Plaintiff,**

v.

**Alice KIRKSEY–HARRINGTON, Defendant.**

Civil Action No. 14–180 (BAH) (AK), Civil Action No. 13–2029 (BAH) (AK)

United States District Court, District of Columbia.

Signed August 18, 2015

Veronica A. Porter, Victoria Lynne Healy, Office of the Attorney General for the District of Columbia, Washington, DC, for Plaintiff.

Charles Anthony Moran, Steve Nabors, Moran & Associates, Washington, DC, for Defendant.

### MEMORANDUM AND ORDER

BERYL A. HOWELL, United States District Judge

This consolidated case was randomly referred to a Magistrate Judge for a report and recommendation on the defendant's Motion for Attorneys' Fees and Costs ("Def.'s Mot."), ECF No. 23. *See* Order, ECF No. 21; Referral to Magistrate Judge, ECF No. 22.[1] On July 31, 2015, the Magistrate Judge issued a report and recommendation, which recommended that the defendant's motion be granted in part and denied in part. Report and Recommendation ("R & R") at 16–17, ECF No. 27.

Specifically, the R & R recommended excluding certain charges with respect to the number of hours billed by defense

---

1. The related matters, *Kirksey–Harrington v. District of Columbia,* Case No. 13–2029 and *District of Columbia v. Kirksey–Harrington,* Case No. 14–180, were consolidated on July 30, 2014. *See* Case No. 13–2029, Minute Order, dated July 30, 2014.

counsel, R & R at 10–11, denying the defendant's argument that her counsel's legal fees may not be reduced because of a violation of her procedural rights, *id.* at 12, and declining to award LSI *Laffey* Matrix rates because the defendant produced insufficient evidence to demonstrate that such rates are the prevailing rates for IDEA litigation in the D.C. metropolitan area, *id.* at 14 (citing *Eley v. District of Columbia,* 793 F.3d 97, 104–05, 2015 WL 4153874, at *6 (D.C.Cir.2015)). Instead, the R & R recommended awarding USAO *Laffey* Matrix rates for counsel's work on this case, except for counsel's February 25 to March 2, 2015 charges for preparing the motion for attorneys' fees, for which the R & R recommended awarding 75% of USAO *Laffey* Matrix rates. *Id.* at 15–16. Lastly, the R & R recommended minor adjustments to defense counsel's time billed for travel, *id.* at 16, and reimbursing the defendant for certain costs, *id.* at 16–17. Consequently, the R & R recommended awarding the defendant attorneys' fees in the amount of $68,903 and costs in the amount of $739.15. *Id.* at 17.

The R & R cautioned the parties that failing to file a timely objection within 14 days of the party's receipt of the R & R could result in their waiving the right to appeal an order of the District Court adopting the recommendations. *See id.* at 17. No objection to the R & R has been timely filed, and the time to file such an objection has lapsed, *see* Local Civil Rule 72.3(b), and, thus, any objections are deemed waived. *See, e.g., Thomas v. Arn,* 474 U.S. 140, 149–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

The Court, upon independent consideration of the pending motion and the entire record herein, concurs with the recommendations made in the R & R. Accordingly, it is hereby

**ORDERED** that the Report and Recommendation, ECF No. 27, is ADOPTED in full; and it is further

**ORDERED** that, for the reasons stated in the Report and Recommendation, the Defendant's Motion for Attorneys' Fees and Costs, ECF No. 23, is GRANTED IN PART and DENIED IN PART; and it is further

**ORDERED** that, for the reasons stated in the Report and Recommendation, the defendant is entitled to attorneys' fees in the amount of $68,903 and costs in the amount of $739.15; and it is further

**ORDERED** that the plaintiff pay the defendant attorneys' fees in the amount of $68,903 and costs in the amount of $739.15 by September 16, 2015, unless the parties reach an alternative mutually agreeable date.

**SO ORDERED.**

*This is a final appealable order.*

## REPORT AND RECOMMENDATION

ALAN KAY, UNITED STATES MAGISTRATE JUDGE

This consolidated case was referred to the undersigned for full case management, which includes a Report and Recommendation on any dispositive motion. (02/06/2014 Order [4].)[1] The undersigned previously considered the District of Columbia's challenge to the Hearing Officer's Determina-

---

1. On July 30, 2014, the trial court consolidated *Kirksey–Harrington v. District of Columbia,* Civil Action No. 13–02029(BAH) (which was earlier referred for full case management) with *District of Columbia v. Kirksey–Harrington,* Civil Action No. 14–00180. (7/30/2014

Minute Order in Civil Action 13–02029.) The trial court directed that filings be made only in Civil Action No. 14–00180, in which the District of Columbia is the Plaintiff and Ms. Kirksey–Harrington is the Defendant.

tion that "[t]he Respondent [District of Columbia] unilaterally determined the Student would be moved from the Non–Public School to Attending School when it refused to place the Student in the only specific program the IEP team discussed when it determined to change his educational placement." (Administrative Record ("AR") [8–1] at 10 [Hearing Officer Determination] ("HOD").)[2]  On January 14, 2015, the undersigned issued a Report and Recommendation [18] recommending that the Hearing Officer's decision to place the Student) at Kennedy at Dunbar for SY 2013–2014 be upheld and further, that the Student's parent be treated as a prevailing party for purposes of recovering attorney's fees. (Report and Recommendation [18] at 24.)

On February 4, 2015, the trial court adopted the Report and Recommendation in a Memorandum and Order [19]. Now pending before the undersigned for a Report and Recommendation is a Motion for Attorneys' Fees and Costs ("Motion") [23] and Memorandum in support thereof ("Memorandum") [23–1] by Alice Kirksey–Harrington ("Kirksey–Harrington"); an opposition to the Motion ("Opposition") [24] by the District of Columbia ("the District"); and Kirksey–Harrington's reply ("Reply") [26]. Kirksey–Harrington requests from the District a total of $80,253.25 in attorneys' fees and costs incurred in connection with bringing an administrative proceeding pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, et seq. and defending against the District's civil action challenging the Hearing Officer's Determination. (Memorandum at 1, 10.) The District opposes the hourly rate applied by Kirksey–Harrington's counsel and asserts

that the Court is not prohibited from reducing the attorneys' fees in this action. See generally Opposition.

## I.  BACKGROUND

Alice Kirksey–Harrington is the parent of D.K., her minor son who is a student with a disability. (Memorandum at 1.) The IDEA guarantees all children with disabilities a free appropriate public education ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), and FAPE "is available to all children with disabilities residing in the State between the ages of 3 and 21, . . . ." 20 U.S.C. § 1412(a)(l)(A). Defendant District of Columbia is a municipal corporation that operates the District of Columbia Public Schools System ("DCPS"). (Complaint [1] ¶ 3.)[3] The District receives federal funds pursuant to the IDEA to ensure access to a Free and Appropriate Public Education ("FAPE") and it is obliged to comply with applicable federal regulations and statutes including the IDEA. See 20 U.S.C. § 1411.

The undersigned incorporates by reference the "Background" section set forth in the January 14, 2015 Report and Recommendation [18] that was adopted by the trial court. At the administrative level, the Hearing Officer permitted the student, D.K., to "remain with the Public/Private Partnership [Kennedy at Dunbar] until the conclusion of the 2013–2014 school year." (AR [8–1] at 14 [HOD].) The District challenged the Hearing Officer's decision but that decision was ultimately upheld by the trial court. (02/04/15 Memorandum and Order [19].) Kirksey–Harrington now moves for an award of attorneys' fees and costs.

---

2.  The page numbers referenced herein are Electronic Case Filing system page numbers.

3.  References to the District of Columbia herein include DCPS, the Respondent during the administrative process.

## II. LEGAL STANDARD

### A. Motion for Attorneys' Fees

Federal Rule of Civil Procedure 54(d)(2) provides in relevant part that a claim for fees and related expenses "must be made by motion" which should be filed "no later than 14 days after the entry of judgment" and "specif[ies] the statute ... entitling the movant to the award" and "state[s] the amount sought." Fed.R.Civ.P. 52(d)(2)(A) & (B)(i)-(iii).[4]

### 1. Statutory Authority and Prevailing Party Status

■ The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. § 1415(i)(3)(B). The court must initially determine whether the party seeking attorney's fees is the prevailing party. *Jackson v. District of Columbia,* 696 F.Supp.2d 97, 101 (D.D.C.2010). *See District of Columbia v. West,* 699 F.Supp.2d 273, 278 (D.D.C.2010) (In considering a claim for IDEA attorney's fees, it is the court "not the hearing officer in the administrative proceeding, which determines prevailing party status ....") (quoting *District of Columbia v. Straus,* 607 F.Supp.2d 180, 183 (D.D.C.2009)).

■ A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit [ ] sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978)). The Supreme Court has indicated that the term "prevailing party" only includes plaintiffs who "secure a judgment on the merits or a court-ordered consent decree."

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Health & Human Resources,* 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct. *Id.* at 605, 121 S.Ct. 1835. The Supreme Court instead determined that a prevailing party must obtain a "material alteration of the legal relationship of the parties." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The standards in *Buckhannon* apply to administrative hearings under the IDEA even though the relief granted is administrative as opposed to judicial. *Abarca v. District of Columbia,* Civil Action No. 06–1254, 2007 WL 1794101 *2 n. 1 (D.D.C. June 19, 2007).

■ "[T]he term prevailing party [is] a legal term of art that requires more than achieving the desired outcome; the party seeking fees must also have been awarded some relief by the court." *District of Columbia v. Straus,* 590 F.3d 898, 901 (D.C.Cir.2010) (internal quotations and citations omitted). In *Straus,* the Court of Appeals considered the following three factors to determine prevailing party status: 1) alteration of the legal relationship between the parties; 2) a favorable judgment for the party requesting fees; and 3) a judicial pronouncement accompanied by judicial relief. *Id.* at 901.

### 2. Establishing a Reasonable Fee

■ The plaintiff has the burden of establishing the reasonableness of any fee

---

4. The trial court set a briefing schedule for the motion for attorneys' fees. (February 11, 2015 Minute Order.)

requests. *See In re North*, 59 F.3d 184, 189 (D.C.Cir.1995). *See also Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir.1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates[.]") "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Smith v. Roher*, 954 F.Supp. 359, 364 (D.D.C.1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

■■■ The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). To demonstrate a reasonable hourly rate, the fee applicant must show: (1) an attorney's usual billing practices; (2) counsel's skill, experience and reputation; (3) the prevailing market rates in the community. *Covington*, 57 F.3d at 1107 (citations omitted.) The determination of a " 'market rate' for the services of a lawyer is inherently difficult" and is decided by the court in its discretion. *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541. The burden is on the fee applicant to "produce satisfactory evidence—in addition to the attorney's own affidavits that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d 1319,1325 (D.C.Cir.1982) ("An applicant is required to provide specific evidence of the prevailing community rate for the type of work for which he seeks an award.") An attorney's usual billing rate may be considered

the "reasonable rate" *if it accords with* the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir.1993) (emphasis added).

## III. ANALYSIS

### A. Kirksey–Harrington's Prevailing Party Status

Kirksey–Harrington prevailed at the administrative level by obtaining the educational placement she sought for D.K. and she further prevailed when the trial court upheld the Hearing Officer's decision. (Memorandum and Order [19].) In its Report and Recommendation [18], the undersigned recommended that Kirksey–Harrington be considered a prevailing party "for purposes of recovering attorney's fees in connection with the Due Process Hearing[.]" (Report and Recommendation [18] at 24.) The trial court concurred with the recommendation that Kirksey–Harrington is "considered the prevailing party for purposes of recovering attorneys' fees incurred in connection with the Due Process Hearing." (Memorandum and Order [19] at 3.) Accordingly, there is no dispute that Kirksey–Harrington is a prevailing party who is entitled to reasonable attorney's fees and costs.

### B. Hours Billed by Counsel

■■■ The undersigned has reviewed the billing records submitted by Kirksey–Harrington's counsel and with respect to the number of hours billed, the undersigned recommends exclusion of certain charges. On May 22, 2013, Ms. Houck billed .5 hours for work performed on behalf of Kirksey–Harrington. (Motion, Exh. 3 [Houck Billing Records] [23–3] at 1.) The undersigned recommends exclusion of this charge on grounds that it is too far re-

moved in time from the charges relating to Ms. Houck's meetings with Kirksey–Harrington to discuss a possible due process complaint. The undersigned further recommends excluding Ms. Houck's July 30, 2013 charges; i.e., 1.5 hours for attending the IEP meeting and .5 hours for reviewing the notes from the meeting. (Motion, Exh. 3 [Houck Billing Records] at 2.) *See* 20 U.S.C. § 1415(i)(3)(D)(ii) (prohibiting an award of attorneys' fees "relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative hearing or judicial action....") *See A.S. v. District of Columbia*, 842 F.Supp.2d 40, 47 (D.D.C.2012); *Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*, 752 F.Supp.2d 1, 9 (D.D.C.2010); *A.C. v. District of Columbia*, 674 F.Supp.2d 149, 156 (D.D.C. 2009) (all excluding hours billed for work relating to IEP meetings). Finally, the undersigned also recommends excluding the June 25, 2014 charge by "LE" for 2.8 hours, on grounds that LE has not been identified by counsel. (Motion, Exh. 4 [Moran/Nabors Billing Records] [23–4] at 2.)

### C. Prohibition against reducing attorneys' fees

■ Pursuant to 20 U.S.C. § 1415(i)(3)(F), a court may reduce the amount of attorneys' fees under certain circumstances such as where the parent or parent's counsel "unreasonably protract[s] the final resolution of the controversy" or the amount of fees "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience" or the "time spent and legal services furnished were excessive considering the nature of the action or proceeding...." 20 U.S.C. § 1415(i)(3)(F)(i-iii). There is an exception to the aforementioned reduction "if the court finds that the

State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G). According to Kirksey–Harrington, "[t]his section refers to § 1415, which includes § 1415(f)(1)(B)'s requirement that DCPS convene a proper resolution session [and] DCPS failed to convene a proper resolution session when it did not include relevant IEP Team members and [thus] failed to make any meaningful effort to resolve [her] case." (Memorandum at 10.)

20 U.S.C. § 1415(f)(1)(B) discusses the statutory requirements for a resolution session; namely, that the LEA will "convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint" which includes a "representative of the agency who has decisionmaking authority on behalf of the agency" where the LEA is provided an opportunity to resolve the complaint, unless the parents and LEA agree in writing to waive the meeting. 20 U.S.C.§ 1415(f)(1)(B)(i)(**i-iv**). In the instant case, Ms. Twilah Anthony, D.K.'s educational advocate, testified that she attended the resolution meeting with Kirksey–Harrington and a District representative, and further, that the LEA representative was available by telephone but was not able to answer her questions about the student's placement at Dunbar. (AR 8–6] at 37–38 [Anthony testimony].) Kirksey–Harrington thus argues that the Court may not reduce her counsel's legal fees because the District "fail[ed] to properly convene a resolution session meeting that allowed [Kirksey–Harrington] to resolve her complaint and avoid a due process hearing." *See* Reply at 3.

Kirksey–Harrington's argument relies upon language from the Consent Decree in

the *Blackman–Jones* class action and the 2011 and 2013 Alternative Dispute Resolution agreements that set forth additional procedural safeguards relating to resolution sessions, over and above those found in the IDEA statute, such as having supervisory program staff available to answer questions pertaining to educational services where the LEA representative is unable to do so. (Reply at 3–4); *see generally* Reply, Exh. 3 [2013 ADR Agreement] at 1–3. The 2013 ADR agreement referenced by Kirksey–Harrington does not indicate that a violation of the terms therein should be construed as a violation of procedural rights barring any reduction in legal fees. While the 2013 ADR Agreement does discuss implementation fees, which are separate from attorneys' fees; it states that "nothing in this agreement reflects the parties' agreement to expand the scope of this litigation to involve payment of attorneys' fees to the parents' bar." (2013 ADR ¶ 124.)

The undersigned recommends that Kirksey–Harrington's argument that counsel's fees may not be reduced because of an alleged violation of her procedural rights under Section 1415 be denied. First, Kirksey–Harrington has not demonstrated that any violation of the resolution session requirements set out in the 2013 ADR agreement should be interpreted to bar the trial court from reducing attorneys' fees. Second, the administrative record indicates that the District complied with the statutory requirements of the IDEA in terms of making the LEA representative available at a resolution meeting. Third, it is arguable that Kirksey–Harrington

waived the resolution session meeting. *See* Administrative Due Process Complaint Notice [8–1] at 20 ("**E. Resolution Session Meeting Between Parent and LEA:** Petitioner waives the Resolution Session Meeting.") Accordingly, the undersigned recommends that Kirksey–Harrington's argument that her counsel's legal fees may not be reduced because of a violation of her procedural rights should be denied.

### D. Hourly Rate

Pursuant to the IDEA, federal courts may award "reasonable" attorney's fees, 20 U.S.C. § 1415(i)(3)(B)(i), which are based on rates "prevailing in the community . . . for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Kirksey–Harrington proffered evidence to establish her attorneys' experience, skill, and reputation in IDEA matters. (Memorandum at 5; Motion, Exh. 5 [Moran Declaration], Exh. 6 [Houck Declaration] and Exh. 7 [Nabors Declaration].) Kirksey–Harrington contends that her attorneys, Ms. Houck, Mr. Moran and Mr. Nabors, should be compensated at the respective rates of $460.00, $771.00, and $320.00/328.00 per hour for work performed during administrative and judicial proceedings. (Motion, Exhs. 3 & 4 [Billing Records].) Ms. Houck, who handled the administrative proceeding, applies the hourly rate that is set forth in the *Laffey* Matrix for the period of June 1, 2014 through May 31, 2015, for attorneys with 11–19 years of experience. (Motion Exh. 3 [Houck billing records]; Opposition Exh. 1 [*Laffey* Matrix 2014–2015].) [5] In her Declaration, Ms. Houck states that she "match[es] [her] hourly rates to those in what is known as

---

5. The *Laffey* Matrix, developed in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 372 (D.D.C.1983) *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir.1984), is generally used to determine a reasonable hourly rate for complex federal litigation in the District of Columbia. *Heller v. District of*

*Columbia,* 832 F.Supp.2d 32, 40 (D.D.C. 2011). The United States Attorney's Office for the District of Columbia updates the Matrix annually to reflect increases in the local Consumer Price Index ("CPI"). *Rooths v. District of Columbia,* 802 F.Supp.2d 56, 61 (D.D.C.2011).

the USAO adjusted *Laffey* matrix[.]" (Houck Decl. ¶ 4.) The charges billed by Ms. Houck were however incurred from July 12, 2013 through November 25, 2013, which would be covered by *Laffey* Matrix year 2013–2014, with a correct billing rate of $450.00 per hour. Ms. Houck proffers no explanation for this discrepancy; *i.e.*, why she employs current *Laffey* rates as opposed to historical *Laffey* rates. Mr. Moran and Mr. Nabors employ hourly rates from the LSI *Laffey* Matrix for the periods of June 1, 2013 through May 31, 2014, and June 1, 2014 through May 31, 2015, regarding attorneys with 20 plus years of experience and 1–3 years of experience, respectively.[6] *See* LSI *Laffey* Matrix, attached as Motion, Exh. 8 [23–8].[7]

Mr. Moran and Mr. Nabors (who practice at the same law firm) explain that their firm "previously set its rates according to the *Laffey* matrix maintained by the United States Attorney's Office for the District of Columbia" until January 1, 2014, when [their hourly] rates were adjusted to the "LSI-based *Laffey* matrix." (Moran Decl. ¶ 9.) Practically speaking, this means that Mr. Moran's billing rate increased by $261.00 per hour as of January 1, 2014.[8] Mr. Moran states that these rates are "regularly paid by clients who retain the firm to litigate cases on a non-contingency basis" (Moran Decl. ¶ 11) but gives no indication what percentage of his clients litigate on a non-contingency basis. *See McAllister v. District of Columbia*, 21 F.Supp.3d 94, 108 (D.D.C.2014) (discussing the defects in an affidavit submitted by counsel in support of enhanced *Laffey* rates; namely, that the affidavit did "not provide sufficient information for the Court to determine whether these rates represent the market rate for routine IDEA litigation" because, *inter alia*, it did "not specify, out of the hundreds of IDEA cases the firm handles, how many of the firm's clients pay the enhanced rate.")

Counsel does not assert that the January 1, 2014 fees, mirroring LSI *Laffey* rates, were based upon any prevailing market rate analysis but instead, the fee increase was admittedly designed to "counter" certain practices by the District; namely, conditioning settlement offers on acceptance of nominal fees;[9] terminating the administrative resolution process for obtaining fees for successful outcomes;[10]

---

6. Mr. Nabors' hourly rate changed from $320.00 to $328.00 but Mr. Moran's hourly rate remained at $771.00.

7. The second version of the *Laffey* Matrix, sometimes referred to as an "enhanced *Laffey* rate," is calculated using the "legal services component of the CPI rather than the general CPI . . . ." *Heller*, 832 F.Supp.2d at 40.

8. The undersigned finds it difficult to believe that consumers in the legal market would agree to pay such a dramatic increase in fees from December 2013 to January 2014.

9. This practice no doubt discourages some cases from settling at the administrative level. The undersigned notes however that a plaintiff's rejection of a settlement offer (during the administrative process) that is conditioned upon nominal attorney's fees has been upheld

in this Court. *See, e.g., Brighthaupt v. District of Columbia*, 36 F.Supp.3d 1, 8 (D.D.C.2014) (where Magistrate Judge Facciola found that a parent was substantially justified in rejecting a settlement offer that limited her to $300.00 in attorneys' fees because the offer was so far from the $5,139.75 Defendant had accrued by that point that "it could only be considered an insincere offer and an insincere offer should not [be the] trigger that cuts off fees under the statute."); *Davis v. District of Columbia*, 71 F.Supp.3d 141, 151–52 (D.D.C. 2014) (employing similar reasoning).

10. Counsel asserts that he now has to litigate fees by filing an action in this Court. The undersigned notes that prevailing parties are not only routinely awarded their fees for the administrative due process proceeding but also the legal fees incurred in bringing a lawsuit to recover fees ("fees for fees"). Fur-

and arguing that IDEA attorneys should be paid $90.00 per hour.[11] (Moran Decl. ¶ 9.)

In her Motion, Kirksey–Harrington provides no evidence of the prevailing market rate for IDEA litigation in the District of Columbia other than attaching a copy of the LSI *Laffey* Matrix and submitting declarations by two of her counsel stating that the rates they are requesting are the rates they normally charge.[12] *See Nat'l Assoc. of Concerned Veterans*, 675 F.2d at 1325 ("[A]ffidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. Recent fees awarded by [ ] courts or through settlements to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.")

The Court of Appeals from this Circuit has recently opined that a plaintiff's evidentiary submission consisting of "the LSI *Laffey* Matrix, [a] declaration explaining

the LSI *Laffey* Matrix and her lawyer's verified statement averring that he charged his paying clients the rates in the LSI *Laffey* Matrix" was insufficient evidence to demonstrate that her requested rates were the rates prevailing in the community for similar services. *Eley v. District of Columbia*, 793 F.3d 97, 104–05, 2015 WL 4153874 *6 (D.C.Cir.2015).[13] The Court of Appeals accordingly found that the plaintiff "[did] not [meet] her burden of 'justifying the reasonableness of the rates.'" *Eley, id.* (citing *Covington*, 57 F.3d at 1107). *See also Devore on behalf of A.M. v. District of Columbia*, Civil Action No. 14–0061(ABJ), 89 F.Supp.3d 113, 119, 2015 WL 1478433 *5 (March 31, 2015) (awarding *Laffey* rates but noting that "[t]here [was] no information about the prevailing rates for special education litigators, or any federal litigators, in this market beyond reference to *Laffey* [and further, that] the plaintiff could have done more to meet her burden to establish the reasonableness of her rates.")

thermore, while litigating attorney's fees may delay the award of attorney's fees to prevailing parties, there are measures that can compensate for a lengthy delay; *i.e*, applying current hourly rates rather than historic hourly rates, or requesting prejudgment and/or post-judgment interest.

11. *See Price v. District of Columbia*, 792 F.3d 112, 115–16 (D.C.Cir.2015) (finding that "[t]he $90 per hour statutory compensation rate in the D.C. Criminal Justice Act did not preempt the prevailing-rate determination required in IDEA fee shifting, nor is it an appropriate factor to consider in making the prevailing-rate determination because it was . . . . only [ ] a back-up promise of compensation").

12. The Declarations by Mr. Moran and Mr. Nabors state that these rates are "regularly paid by clients who retain the firm to litigate cases on a non-contingency basis." (Moran Decl. ¶¶ 10-11; Nabors Decl. ¶¶ 9-10.) Attached to Kirksey–Harrington's Reply is a Declaration of Douglas Tyrka, an IDEA attorney charging LSI *Laffey* Matrix rates, who

indicates that he "has had several clients who pay the firm those rates directly" and his firm has "been retained at those rates within the last six months" (Reply Exh. 4 [26-4] ¶ 5 [Tyrka Declaration].) While an attorney's own declaration may be evidence of a prevailing market rate, for attorneys who primarily handle IDEA cases on a contingency basis, the rate that they charge a small number of non-contingency clients may not be as persuasive as the rate that they actually collect on the majority of the IDEA cases.

13. In *Eley*, the District cited more than 40 IDEA fees cases in which plaintiffs received fee awards based on lower prevailing hourly rates. 793 F.3d at 104–05, 2015 WL 4153874 *6. The Court of Appeals noted that "evidence of the prevailing market rate can take many forms." *Eley, id.* at n. 5; *see Covington*, 57 F.3d at 1113 (Henderson, J., dissenting) ("A statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain sub-market of legal services would be powerfully persuasive.") (emphasis omitted)).

■ The undersigned recommends that the Court decline to award LSI *Laffey* Matrix rates because Kirksey–Harrington has failed to demonstrate that such rates are the prevailing market rates for IDEA litigation in the metropolitan D.C. area. In this district, judges "routinely refer to the *Laffey* Matrix to determine the reasonableness of requested attorney's fees in IDEA actions." *B.R. ex rel. Rempson v. District of Columbia*, 802 F.Supp.2d 153, 164 (D.D.C.2011). *See generally Brighthaupt v. District of Columbia*, 36 F.Supp.3d 1, 4 (D.D.C.2014) (recognizing that *Laffey* rates may be used as "an appropriate starting point for determining rates of reimbursement for attorneys who challenge the decisions of the DCPS [and] [w]here the issues are complex, the full *Laffey* rate has been awarded by some members of this Court.")

The District acknowledges that "the USAO *Laffey* Matrix has come to represent the prevailing market rates for representations in complex federal litigation" but argues that this litigation was a "simple, routine, straightforward administrative hearing, which raised uncomplicated questions of law." (Opposition at 11–12 (emphasis removed)). The District accordingly argues for an hourly rate equal to 75% of the USAO *Laffey* rates. (Opposition at 5, 13.) *See generally Price v. District of Columbia*, 792 F.3d 112, 117 (D.C.Cir.2015) (Brown, J., concurring) ("In deciding what constitutes reasonable attorneys' fees, courts have a tendency to err on the side of awarding too much rather than too little. However inflated fee awards are far from harmless; they produce windfalls to attorneys at the expense of public education.")

■ In an analysis of what constitutes a "reasonable" attorney's fee, courts may consider factors such as the complexity of the issues addressed during the IDEA administrative process, the work that was performed by counsel, and the manner in which the disputed issues were resolved. *See, e.g., McAllister v. District of Columbia*, 53 F.Supp.3d 55 (D.D.C.2014) (discussing reasons for awarding less than full *Laffey* rates and distinguishing circumstances where rates equaling or exceeding *Laffey* have been applied); *Parks v. District of Columbia*, 895 F.Supp.2d 124 (D.D.C.2012) (examining the record in the case with regard to the complexity of the proceedings, to determine whether fees equal to or near the *Laffey* rate apply).

■ In this case, the undersigned recommends the application of USAO *Laffey* Matrix rates with regard to counsel's work on this case, with the exception of counsel's February 25–March 2, 2015 charges relating to preparation of the motion for attorneys' fees.[14] The undersigned recommends that charges relating to the motion for fees should be billed at 75% of USAO *Laffey* Matrix rates. In support of the application of USAO *Laffey* rates to the majority of charges, the undersigned first notes that this case involved not only an administrative proceeding but also in-court litigation. At the administrative level, Kirksey–Harrington's counsel had to address the unique issue of moving for a "stay-put" for the Student at a school he had never attended since he could not return to his prior school. (Houck Billing Records at 3.) The administrative record in this case also indicates that the facts underlying this case were somewhat confusing, in part because the placement proposed by the District—Dunbar High School—was similar in name and at the same physical location as the placement

---

**14.** Applying USAO *Laffey* rates would compensate Ms. Houck at $450.00 per hour; Mr. Nabors at $250.00/$255.00 per hour; and Mr. Moran at $510.00/$520.00 per hour.

requested by Kirksey–Harrington—Kennedy at Dunbar—and D.K. had previously attended the Kennedy Institute. *See e.g.,* AR [8–3] at 24–25 [Order granting Petitioner's Motion to Stay Put] (where it was unclear if the Hearing Officer was placing the Student at Dunbar High School or Kennedy at Dunbar).[15]

Furthermore, the dispute underlying both the administrative proceeding and litigation in this Court involved determination of the student's educational placement, which is a rather complicated legal issue. In his conclusions of law, the Hearing Officer analyzed the meaning of an "educational placement" in the IDEA context. (AR [8–1] at 11–12[HOD].) The Hearing Officer noted that "the matter is more complicated because of the vagaries of what is a 'placement'" and cited from some of the regulations and case law examining this issue. (*Id.*)[16] After Kirksey–Harrington obtained a favorable decision regarding placement, the District challenged the Hearing Officer's Decision in this Court. Prior to making a recommendation on whether or not to uphold the Hearing Officer's Decision, the undersigned held a hearing on the parties' cross-motions. The undersigned subsequently issued a Report and Recommendation containing a rather lengthy analysis of the term "education placement" and recommended that the HOD be affirmed. That Report and Recommendation was adopted by the trial court in a Memorandum and Order [19].

### 1. Travel Time

In accordance with the above recommendation regarding hourly rates, the undersigned recommends one minor adjustment to Ms. Houck's time billed for travel, which was billed at 50% of counsel's regular hourly rate. Counsel applies a travel rate of $230.00 per hour which should be adjusted to $225.00 per hour, thus totaling $450.00 for 2 hours. Similarly, Mr. Nabors' December 2, 2014 charges for travel to and from the hearing should be adjusted from $164.90 to $127.50 (which is half of the applicable *Laffey* rate of $255.00).

### E. Costs

The District did not address the costs requested by Kirksey–Harrington. The undersigned recommends that Kirksey–Harrington be reimbursed for the costs of $696.10 billed by Ms. Houck,[17] and adjusted costs of $43.05 billed by Mr. Nabors and Mr. Moran, with a recommended copying rate of $0.15 per page as opposed to $0.25 per page. *See Johnson v. District of Columbia,* 850 F.Supp.2d 74, 81–82 (D.D.C.2012); *see also McClam v. District of Columbia,* 808 F.Supp.2d 184, 190–91 (D.D.C.2011) (concluding $0.25 per page was excessive).

### IV. *RECOMMENDATION*

The undersigned recommends that for the reasons stated above, Kirksey–Harrington's Motion for Attorneys' Fees and Costs [23] be granted in part and denied in part. In this case, Ms. Houck documented 98.6 hours at $460.00/hour and 2.0 hours of travel time at $230.00/hour, totaling

---

15. A review of the administrative hearing transcript indicates that prior to the hearing, counsel engaged in a discussion with the Hearing Officer for the purpose of distinguishing between Dunbar High School and Kennedy at Dunbar and explaining inclusion programs. (AR [8–6] at 12–23 [Due Process Hearing Transcript].)

16. The Hearing Officer also commented that "there is another twist to this case which makes it a little more intriguing than a lot of these placement/location cases." (*Id.* at 23) referencing the letter received by Kirksey–Harrington prior to the IEP meeting).

17. Ms. Houck billed her 2 hours of travel time under costs but that is reimbursed under fees.

$45,816.00. (Houck Billing Records.) The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of .5 hours for unrelated work leaving a total of 100.1 hours

- Disallowance of 2.0 hours for the IEP meeting leaving a total of 98.1 hours

- Application of a billing rate of $450.00/hour for 96.1 hours spent on legal work, totaling $43,245.00

- Application of a billing rate of $225.00/hour for 2 hours of travel time, totaling $450.00

- The total fees for Ms. Houck's work equal $43,695.00

Mr. Nabors documented 1.4 hours billed at $320.00/hour and 90.4 hours billed at $328.00/hour and 1.0 hour billed at 50% of $328.00/hour for travel; Mr. Moran documented 5.0 hours billed at $771.00/hour and someone identified as "LE" billed 2.8 hours at $179.00/hour. The hours total 100.6 and the services subtotal is $33,707.40. The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 2.8 hours (valued at $501.20) billed by "LE," who is not identified by counsel

- Application of a billing rate of $250.00/hour for 1.4 hours (prior to June 1, 2014) billed by Mr. Nabors, totaling $350.00

- Application of a billing rate of $255.00/hour for 78 hours billed by Mr. Nabors, totaling $19,890.00

- Application of a billing rate of $127.50/hour (50%) for 1.0 hour of travel by Mr. Nabors, totaling $127.50

- Application of a billing rate of $191.25/hour (75%) for 12.4 hours relating to preparation of motion for fees by Mr. Nabors, totaling $2,371.50.

- Application of a billing rate of $510.00/hour for 2.7 hours (prior to June 1, 2014) billed by Mr. Moran, totaling $1,377.00

- Application of a billing rate of $520.00/hour for 1.5 hours billed by Mr. Moran, totaling $780.00

- Application of a billing rate of $390.00/hour (75%) for .8 hours relating to preparation of motion for fees by Mr. Moran, totaling $312.00

- The total fees for work by Mr. Moran and Mr. Nabors equal $25,208.00

The undersigned thus recommends that Kirksey–Harrington is entitled to attorney's fees totaling $68,903.00 and costs in the amount of $ 739.15.

## V. REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Date: July 30, 2015